JEAN BAPTISTE CECILE *v.* AUGUSTINE ST. DENIS.

Where a sale of slaves is annulled, at the suit of the creditors of the vendor, on the ground of fraud, the purchaser will not be responsible for their hire pending the suit. *Per Curiam:* All that is required, by art. 1972 of the Civil Code, is, that the property, or its value, shall be applied to the payment of the debts of the plaintiff. That article is silent as to the hire of the slaves, or the rent of the property in dispute.

APPEAL from the District Court of Natchitoches, *King*, J.

GARLAND, J. This case was before this court at the October term, 1839, when it was remanded for a new trial. The object of the suit was then stated, and a judgment given, remanding it for a new trial. 14 La. 174. It is sufficient to say now, that the purpose is to set aside and annul a sale of slaves, made by the plaintiff to the defendant, on the ground that it was obtained from him by fraud, under pretext of screening the property from his creditors, and that certain instruments of writing, given at or about the time when the sale was to be executed, were, in effect, counter-letters. When the cause came again before the court below, the defendant answered the two interrogatories directed by this court to be answered, by saying that she had never seen the papers mentioned, nor had she ever given any counter-letter, nor did she know where the papers described were. At the same term of the court, April, 1842, on the affidavit of the plaintiff, that one or both of the papers mentioned by him were in the possession of one of the defendant's counsel, an order was made directing him to produce it or them, and in obedience to it he produced the written contract of hire from the defendant to the plaintiff, and said it had been given to him by the former, though she had, in effect, sworn, but a short time before, that no such paper was ever executed. The case was then tried, and upon the answers to the interrogatories, and some other evidence, a verdict was given by a jury in favor of the defendant, which, upon motion and cause shown, was set aside, and a new trial granted. At the fall term, 1842, of the court, the case was again tried by a jury, when a verdict was given in favor of the plaintiff, which was on motion also set aside, and a new trial granted. The cause then stood over until the November term, 1843, when it was finally tried. At and between the fall terms of 1842 and 1843, several creditors of Cécile, the plaintiff, intervened in the suit, setting up their claims, and alleging that the sale was made to defraud them, adopting the allegations of the petition, so far as they were applicable to their cases, and alleging others, and all praying that the sale might be annulled, and the slaves subjected to the payment of their debts. The answer to all the interventions is a general denial, and

a plea that their debts are prescribed by five years. During the pendency of the suit, the plaintiff, by amended petitions, from time to time increased his demand for damages, so as to cover the hire, or value of the use of the slaves by the defendant. At the November term, 1843, the cause was again tried by a jury, and upon the evidence submitted to them a verdict was given "for the defendant, that the sale stand good as between the defendant and the plaintiff;" but as to the intervenor, " that the sale to the defendant be annulled." The jury, further, go on to say, that they give a verdict in favor of Metoyer, one of the intervenors against Cécile, and that they " fix the hire of the said slaves from 1838 to 1840, at the rate of $75, per year, each, each intervenor having recourse upon said hire from the time of their intervention, and upon the slaves themselves, from the same time." After this verdict was rendered, the defendant moved the court for a new trial, on the ground that so much of it, as was in favor of Morgan, Dupré, and Metoyer, the intervenors, was contrary to law and evidence. This motion was overruled, and a judgment was rendered in favor of the defendant, as against the plaintiff, that he take nothing by his action, and pay the costs. But the court decree that, as to the intervenors, Morgan, Dupré, and Marie Suzette Pierre Metoyer, that the law and evidence, and verdict of the jury are in their favor; wherefore it is ordered, that the said Marie S. P. Metoyer, recover of Cécile, the plaintiff, the sum $560 15, with interest at ten per cent per annum from April 1st, 1843, and her costs as to him.* It is further decreed, that the sale made, in April, 1838, from the plaintiff to the defendant of the slaves named, be annulled, so far as it effects the aforesaid intervenors, and that the defendant pay the claims of said intervenors against the plaintiff, Cécile, with interest, and the costs of the suits of said intervenors, or that she give up the slaves and their increase, and $50 per year hire for each slave, the said intervenors to have recourse upon said hire from the

---

* The other intervenors had obtained judgments ascertaining their respective debts, before intervening in this suit.

time of the filing of their respective interventions, and also upon the slaves themselves to satisfy the claims against Cécile, the plaintiff.

From this judgment the defendant prayed a suspensive appeal, and has given a bond to the intervenors alone, for the sum required by law.

In this court the counsel for the plaintiff and intervenors have argued the case as though the former was an appellee and party before us, which he is not. He did not ask for a new trial in the court below, nor has he appealed from any part of the judgment. When the defendant asked for a new trial, she expressly limited the motion to so much of the verdict as was against her. When she took the appeal, the plaintiff was not made a party to it; no bond was given to him, nor was he cited so far as the record informs us. We cannot presume that the defendant intended to appeal from a judgment in her favor. The plaintiff has no right, without asking for an appeal in the court below from a judgment rendered againt him, to thrust himself into this tribunal, without being cited, and without having given bond and security, or complied with any legal formalities. So far as is relates to him we cannot go into an investigation of the case, nor of the exception taken by the defendant as to the action.

As to the intervenors, they all appear to be judgment creditors of Cécile, the plaintiff, in suits commenced since the institution of the suit by him against the defendant; but testimony was offered and heard, without objection, to prove that the debts existed and were owing before the sale in April, 1838, although the notes in two cases bear date long subsequently. The question of fraud and simulation, as between these creditors and the defendant, is, therefore, to be decided. The plaintiff admits that one of the purposes in making the sale to the defendant, was to defraud, or at least delay his creditors, of which purpose, he says, he soon repented. He is proved to be notoriously insolvent, and, as between him and his creditors, the case may be considered as clearly made out. As against the defendant, it also appears to us, that there is sufficient evidence of simulation and fraud towards the creditors, to annul the sales to them. It is

our opinion that the defendant swore falsely, when she answered the eighth and ninth interrogatories, after the cause was remanded from this court, in 1839. One of the documents which the plaintiff alleged existed, she, in effect, swore never did, when she had given it to her counsel, and he produced it under an order of the court. This circumstance is calculated to shake our confidence in the verity of the other answers she gave ; and the omission on her part to give any evidence of the payment of the $1100, in specie, as the price of the slaves, does not advance the justice of her case in our estimation. We all know that, in the spring of 1838, specie was not very plenty in this State ; and it is very probable that the defendant, had it been true that she had, and paid $1100, in specie, for two slaves, would have been able to find a witness to prove it. The defendant is a free woman of color, and in answer to one of the interrogatories propounded to her, admitted that she had to be furnished with money a short time previously, to pay for a favorite slave named Cyprien, his mother having advanced it. Besides the internal evidence of her own statements, the testimony of Lafon and other witnesses, it seems to us, is sufficient to prove there was fraud enough in the transaction, to authorize an annullment of the sale, so far as creditors are concerned ; and two juries, who tried the case, came to the same conclusion.

Although we are of opinion that, so far as the sale affects the interest of the creditors, it must, as to them, be revoked ; yet we are unable to see upon what ground, or under what law, the court and jury came to the conclusion, that the defendant was liable to the creditors for the hire of the slaves pending the suit. It is not in virtue of any hypothecary right that the action is instituted ; and we see nothing in the Code, which confers on the creditors, having the right of instituting a revocatory action, any right to recover the hire of slaves. Article 1972 of the Civil Code says, the judgment in this action shall be, that the contract be avoided as to its effects on the complaining creditors, and that all the property or money taken from the original debtor's estate by virtue thereof, or the value of such property, to the amount of the debt, shall be applied to the payment of the plaintiffs. All that this article requires is, that the property or

its value, shall be applied to the payment of the debts. It is silent as to the hire of slaves, or rent of the property in contest. We are of opinion, that there is error in this part of the judgment, which we must correct.

The plea of prescription as it is presented, it seems to us, is of no effect. It does not go to the revocatory part of the action ; but is applicable to the demands which the creditors have against Cécile, and is not sustained by evidence.

It is, therefore, ordered and decreed, that so much of the judgment as revokes and annulls the sale from Cecile, the plaintiff, to the defendant, in its effect on the creditors, Morgan, Dupré, and Marie S. P. Metoyer, and decrees said defendant to pay their debts, with interest, and the costs incurred in the court below, or that she give up the slaves, Henry, and Mary and her increase, or the value of them, or such of them as are not delivered, to be applied to that purpose, be affirmed ; and it is further ordered, that so much of the said judgment as decrees the defendant to pay hire for said slaves, and gives the intervenors a recourse on it, be annulled and reversed ; the said intervenors paying the costs of this appeal in proportion to their respective debts, and all the costs of the intervenors in the court below to be paid by the defendant.

*J. Taylor* and *Tuomey*, for the plaintiff and intervenors.

*J. B. Carr*, for the appellant.